UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ROCK 'N PLAY SLEEPER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 1:19-md-2903<br><br>This Document Relates to: ALL CASES |

## AGREED ELECTRONIC DISCOVERY PLAN

Having met and conferred regarding the matters set forth herein, Plaintiffs and Defendants ("Parties") stipulate and agree that this Agreed Electronic Discovery Plan ("Plan") shall govern the collection and production of electronically-stored information as well as paper documents that have been converted to an electronic format either prior to or in connection with the above-captioned matter ("ESI"). This Plan shall not relieve any party of any obligations under the Initial Case Management Order (ECF 12).

1. <u>E-Discovery Liaisons</u>. The Parties have identified liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, custodians, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without intervention from the Court. The Parties' respective e-discovery liaisons are: (1) PLAINTIFFS: Daniel Tepper and Kate McGuire of Wolf Haldenstein Adler Freeman & Herz LLP, Mark A. Smith of Caruso

Law Firm, P.C., and Katherine G. Howard of Connors LLP; (2) DEFENDANTS: Matthew P. Kanny, Adrianne E. Marshack and Samantha J. Katze of Manatt, Phelps & Phillips, LLP.  The Parties may identify alternative or additional liaisons during the litigation upon written notice to the Parties' then-existing liaisons without the need to modify this Plan pursuant to paragraph 29.

2. <u>Scope and Proportionality of Discovery</u>.  The Parties shall meet and confer in good faith regarding the scope and extent of electronic discovery that is proportional to the needs of the case and in conformity with the Federal Rules of Civil Procedure, the Case Management Order dated September 20, 2019 (ECF 12) ("CMO") and other orders entered by the Court, including concerning the following:

    a) each Party's custodians of potentially discoverable, non-duplicative documents and ESI;

    b) methods to search ESI to identify ESI that is potentially discoverable and to filter out ESI that is not potentially discoverable, including proposed custodians and search terms, and modifications to same based on volume and burden of responsive ESI;

    c) phasing and prioritization of discovery of documents and ESI, including prioritization of particular ESI, sources or custodians;

    d) the creation or modification of date ranges for potentially discoverable ESI; and

    e) sources and/or systems that are not reasonably accessible, are unintelligible, or are no longer in use including the date of inactivity.

3. <u>Inaccessible Data</u>.  No Party shall be required to collect or search sources of ESI that are not reasonably accessible, or to allow on-site inspection of electronic media without a court order.  Pursuant to Local Rule of Civil Procedure

26(e)(2), searches and production of ESI identified as not reasonably accessible shall not be required to be conducted until the initial disclosure of reasonably accessible ESI has been completed. Requests for information expected to be found in ESI that is not reasonably accessible must be narrowly focused with some basis in fact supporting the request, and good cause must be provided. The Party seeking such discovery may be required to pay all or a portion of the costs of search, retrieval, review, and production of the information, upon application to the Court. The Parties reserve all defenses including disruption of business and information activities. Parties reserve their rights to seek an order from the Court on the issue of cost-shifting. The following types of data are presumed to be inaccessible and are not subject to discovery absent further Court order and subject to applicable law, including but not limited to the Federal Rules of Civil Procedure and the local rules of this Court: (i) deleted, slack, fragmented, or other data only accessible by forensics; (ii) random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; (iii) on-line access data, such as temporary internet files, history, cache, and cookies; (iv) back-up data that is substantially duplicative of data that is more accessible elsewhere; (v) electronic data (*e.g.* email, calendars, contact data, notes, and text messages) sent to or from mobile devices, provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or cloud storage) and that such other copy is being produced from such more accessible source; (vi) automatically-saved versions of documents that are duplicative of

documents more accessible elsewhere and that such other copy is being produced from such more accessible source; (vii) server, system or network logs; and (viii) data remaining from systems no longer in use that cannot be reasonably accessed and exported in a usable format and is unintelligible on the systems currently in use, provided that the existence of such data is disclosed.

4. <u>De-Duplication</u>. In order to avoid unduly burdensome document processing, production and review, the Parties may de-duplicate for production documents and ESI across custodians using hash value matching. If there is any handwriting or other alteration of a document, it shall not be considered a duplicate under this provision. If the Producing Party becomes aware of any file that was incorrectly filtered during the de-duplication process and that should have been produced as responsive, the Producing Party shall promptly produce same to the Receiving Party and, if the Producing Party contends the file is privileged, redacted or otherwise protected from disclosure, shall log it in accordance with §K(12) of the CMO. Additional custodians who had a copy prior to de-duplication will be populated in the ALL_CUSTODIANS field. Email that includes content in the "bcc" or other blind copy field shall not be treated as duplicate of an email that does not include content in the "bcc" or other blind copy field, even if all remaining content in the email is identical. Loose electronic files will not be compared to email attachments for deduplication purposes. The Parties will not electronically de-duplicate hard copy documents.

5. <u>Load Files</u>.  For all produced paper and unstructured ESI (*see, e.g.,* ¶ 7 below), a standard Opticon image load file indicating document boundaries and location of images will accompany the images.  The fields should include Bates ID, Volume Name, Path\TIFF Name (or Path\JPEG Name), DocBreak and Document.  When producing a multi-page document, images for the Document should not span multiple directories.  In addition, Parties responding to a request (Producing Parties) should not include more than 500 images in a single directory unless a document is more than 500 pages.

6. <u>Scanned Images</u>. Scanned images of paper copies of documents shall be produced in the manner in which those documents were kept in the ordinary course of business.  Where paper documents have identification spines, "post-it notes," or any other labels, the information on the label shall be scanned and produced.  The Parties will utilize commercially reasonable efforts to ensure that scanned images in a single production are produced in consecutive Bates number order.

Unless they are oversized, paper documents will be produced as scanned documents in Group IV single-page TIFF format files (or in the case of documents containing color, JPEG files) imaged at 300dpi along with searchable TXT files (created using OCR), will be produced only with metadata field information for the Custodian/Source field, and will additionally be produced with standard Opticon image load files.  Paper documents will also be produced with information regarding the organizational structure of the file folder, binder or other location from which the document was collected, to the extent that information is available for each

document.  If an image is illegible or difficult to read, a Party propounding the request may ask to see the original document.

Machine-generated OCR created from scanned images of hard copy documents will be provided at a document level.  There will be one text file per document, named the same as the BATES_BEGIN field referenced in Appendix A for that document.  For documents without extractable text, OCR shall be provided.  The OCR text file for a document may reside in the same location (file directory) as the images for that document.  The text file associated with any redacted document will exclude redacted text.  If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party.  The Parties may unitize their documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper documents like staples, clips and binder inserts) or logical unitization (*i.e.*, a manual review of the paper to determine what logically constitutes a document like page numbers or headers).  If unitization cannot be maintained, the original unitization should be documented in the data load file or otherwise electronically tracked.

7. <u>Unstructured ESI (e.g. email, instant message, text message, Word, Excel, PowerPoint)</u>. Unstructured ESI also will be produced as Group IV single page TIFF images (or in the case of documents containing color, JPEG files), 300 DPI, named the same as their Bates number, except as noted below.  Each TIFF or JPEG

should be endorsed with a unique document identifier (*i.e.*, Bates number). Excel files and PowerPoints which do not have redactions will be produced in native format, named the same as their Beginning Bates number and with their confidentiality designation, with placeholder TIFF images endorsed substantially as follows: "this file produced natively," the applicable Bates number, and any other applicable endorsements. Native files shall be produced with all related searchable text and metadata (to the extent it exists). The Parties will discuss additional production in native format on a document by document or category by category basis.

Extracted text taken from native files will be provided at a document level. There will be one text file per document, named the same as the beginning Bates number of the document. The extracted text file for a document may reside in the same location (file directory) as the images for that document. The text file associated with any redacted document will exclude redacted text (*i.e.* the Producing Party can OCR the redacted image of the unstructured ESI and replace the original extracted text). To the extent a document has hidden comments, speaker notes, or columns or other embedded data, the Parties agree this data should be legible and produced in such a way as to understand its context and not block other text or data subject to paragraph 9 below.

8. <u>Images/Color</u>. To the extent any document may not be in a searchable format, the Producing Party shall use commercially reasonable efforts to make the document searchable using OCR if there is no material additional cost related to

7

such format. If there is a material additional cost, the Parties will meet and confer. All documents that contain color shall be produced in color as JPEG files.

9. Native Files. For files that cannot be imaged (*e.g.*, audio visual files) or become unwieldy when converted to images or PDF (*e.g.*, source code, large diagrams, spreadsheets and databases, etc.), the Producing Party will produce a Bates-numbered placeholder (a single-page slip-sheet indicating that the native item was produced) along with the file itself in native format. The native file will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced. Redacted documents will be produced as images with corresponding redacted text and metadata. If a document produced as a non-native file is such that there may be relevant data in the native version the native version shall also be produced. The Parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied). If any Party intends to use as an exhibit at any hearing or at trial a native file produced by another Party, that Party shall bear the burden of proving the copy of the native file being introduced corresponds to the original native file. The following documents shall be produced in native form: Microsoft Excel and other spreadsheet files and PowerPoint files. Microsoft Word documents will be imaged out with track changes and other hidden content exposed on the image to the extent possible.

10. Specialized Databases. To the extent that any reasonably-accessible information that is potentially discoverable resides in an existing database,

structured file, or other specialized file type not otherwise addressed herein, the Parties agree to meet and confer regarding the proper and appropriate means to produce such information.

11. <u>Physical Objects</u>. Physical objects, such as product prototypes or tested units, shall be labeled with an appropriate Bates number, and a placeholder shall be included for them in the electronic production, bearing that Bates number and the designation "Physical Object."

12. <u>File Types</u>. The Parties agree to search readily identifiable and reasonably accessible ESI reasonably likely to contain potentially discoverable documents or information.

13. <u>Metadata</u>. A standard Relativity delimited load file (.DAT), with field header information added as the first line of the file, will be provided with each production. Documents will be produced with related metadata (if it exists) as described in the attached Appendix A specifications, unless as otherwise provided herein. Metadata will be provided in a flat file (.txt. or .dat) using standard relativity delimiters. At a minimum, the following fields will be provided for all Documents scanned from paper copies in the production: BATES_BEGIN and BATES_END, BEGIN_ATTACHMENT, END_ATTACHMENT, FAMILY_ID, CUSTODIAN, REDACTED and CONFIDENTIALITY. Each line will begin with the fields BATES_BEGIN and BATES_END.

14. <u>Text</u>. Document level text files (.TXT) will be provided for each document produced. Text files will be named the first Bates number of the

respective document. Extracted text will be provided when it exists for non-redacted documents. OCR text will be provided for documents when no extracted text exists or when the document is redacted.

15. <u>Related Documents</u>. If a file or document attaches another file or document, then the referenced document will be considered for this Plan a "Related Document." A link in a document is not considered a Related Document for purposes of this Plan. If technologically feasible, email attachments will be extracted and related back to the respective email via the ATTACH_BEGIN field referenced in Appendix A, and the Producing Party shall produce all non-privileged attached files, however referenced in the parent document, with the attachment immediately following the parent document and Bates-stamped in sequential order. If an attachment is privileged, a slip sheet referencing the attachment and the assertion of privilege shall be included in lieu of the attachment. Embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted and related back to the respective top-level parent document (*e.g.*, standalone file, email message, etc.) via the ATTACH_BEGIN field referenced in Appendix A. Related Documents will be produced within a continuous Bates range. In the event the Producing Party discovers that the production of a Related Document as provided in this Paragraph is not technologically feasible, the Producing Party shall notify the Requesting Party and the Parties shall meet and confer to discuss.

16. <u>Confidentiality Designations</u>.  If a particular document has a confidentiality designation in accordance with any Confidentiality and Protective Order entered in this matter, the designation shall be stamped on the face of all images pertaining to such document, in the lower left-hand corner of the document, or as close thereto as possible while preserving the underlying image. If the Receiving Party believes that a confidentiality stamp obscures the content of a document, then the Receiving Party may request that the document be produced with the confidentiality designation in a different position.  Documents produced in native format may be designated confidential in their file names or by separate letter indicating the Bates numbers and designations of each document so designated provided that confidentiality designations are uniform.  The terms of any protective order entered in this matter, including with respect to the designation of any electronic document or information as confidential and with respect to any inadvertently-produced documents that are privileged or otherwise protected from disclosure, shall apply to electronic documents and information to the same extent as they apply to any hard-copy documents and information.

17. <u>Redacted and Withheld Documents</u>. When a particular family member (including but not limited to attachments) is being withheld but other family members in a document family are being produced, a placeholder sheet bearing an appropriate Bates number and stating the basis for withholding (i.e., "Privileged" or "Work Product") should be included in the electronic production.  If the Producing Party is redacting information from a page, the Producing Party should

electronically apply the word "Redacted" onto the page at or reasonably near the location of the redaction(s) and produce a redaction log as required pursuant to the CMO. Documents that contain redactions will be produced with the metadata reasonably available after the redaction, such as Beg Bates, End Bates, Beg Attach, End Attach, Doc Date, Author, Sender, Custodian(s), and Recipient(s).

18. <u>Encoding Format</u>. Metadata DAT files will be provided in UTF-8 encoding.

19. <u>Method of ESI Production</u>. All ESI productions, irrespective of format, shall be produced to the Receiving Party via portable media such as compact disc (CD), digital versatile disc (DVD), external hard drives or USB flash drive, via File Transfer Protocol (FTP) site or secured sharefile site.

20. <u>Search Terms</u>. The Parties agree to meet and confer in good faith regarding the search criteria (including Boolean search strings, custodians, and date ranges) they will use to identify a reasonable and proportionate corpus of documents for review, consistent with paragraph 2 of this Plan, the CMO and other orders of the Court. Documents identified by search term criteria may be reviewed for privilege, confidentiality, redactions, and responsiveness to discovery requests prior to production.

21. <u>ESI Discovery Dispute Resolution</u>. Prior to bringing any discovery dispute to the Court, including a dispute regarding the interpretation or modification of this Plan, the Parties must attempt to resolve the dispute on their own, in good faith, and in accordance with the Court's and local rule procedures.

22. <u>Disclosed Protected Information And/Or Otherwise Privileged Information</u>. Nothing in this Plan shall be interpreted to require disclosure of non-discoverable information or discoverable information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Information produced in accordance with this Plan that is subject to a claim of privilege shall be treated in a manner consistent with any order entered in this matter pursuant to Federal Rule of Evidence 502(d). The Producing Party shall provide a privilege and/or redaction log pursuant to § K(12) of the CMO. The Parties reserve all objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

23. <u>Preservation</u>. The Parties must take steps reasonably necessary to ensure that potentially discoverable documents and ESI are preserved consistent with the Federal Rules of Civil Procedure, the local rules of this Court or other applicable law.

24. <u>On-Site Inspection of Electronic Media</u>. The Parties agree that, in the absence of a showing of specific and reasonable need, there is no obligation to permit on-site inspection of electronic media.

25. <u>Hard Copies/Paper Copies</u>. Except as provided for herein, nothing in this Plan shall alter the Parties' obligation to search for paper copies of documents in their possession, custody or control which may be responsive to discovery requests served in this matter.

26. <u>Document Numbering</u>. All documents produced by any Party during discovery shall have their pages numbered sequentially, with each Producing Party starting with document 1 preceded with seven (7) zeros such as "00000001." All subsequent productions will begin where the last number ended for the particular Producing Party. The letter prefix preceding the blocks of numbers for the Parties shall be such as to identify the source; for example, FSHR for Fisher-Price, MATT for Mattel, BARTON for Emily Barton, BLACK for Linda Black, and so forth, with each particular producing Plaintiff and Defendant using a separate letter prefix. Should any pages inadvertently be skipped with a Bates number, one will be filled in with the same sequence of numbers as left off followed by suffix numbering .0001, .0002, and so forth until all the unnumbered pages are numbered, such as "C000000015.0001, C000000015.0002," etc.

27. <u>Production of Documents Previously Produced</u>. Where Defendants produce document productions from other actions or proceedings in this litigation, Defendants shall do so in the form in which they were produced in such other action or proceeding, together with any privilege logs covering such productions, to the extent any such privilege logs were prepared and produced in those other actions or proceedings. In the event that no privilege logs were prepared and produced in those other actions or proceedings, Defendants will so advise Plaintiffs.

28. <u>Costs</u>. Each Party shall bear its own costs of producing relevant ESI in its possession or control. This provision does not prohibit any Party from seeking cost-sharing measures in the event that (1) a particular discovery request is overly

broad or unduly burdensome; (2) a Party requests more metadata than required under this agreement; (3) a Party requests on-site inspection of electronic media; or (4) a Party engages in sanctionable discovery conduct. This provision applies not only to ESI, but to discovery in this action generally.

29. <u>Modifications</u>. At any point during discovery, and except as set forth in Paragraph 1 of this Plan, either Party may request, in writing, specific modifications to the Plan. The Parties will meet and confer to discuss any requested modification. If a dispute arises, the Parties will use the dispute resolution guidelines set forth in Paragraph 21.

30. <u>Reservation of Rights</u>. The Parties acknowledge that during the course of discovery, additional custodians with relevant information may be identified, and additional terms to be included in searches may become apparent. The Parties agree to meet and confer concerning discovery of documents from such additional custodians or retrieved using such additional terms as needed. In addition, the Parties reserve the right to meet and confer as to the search terms and custodians relevant to each phase of litigation (i.e., class certification and merits).

Dated: October 15, 2019

| | |
|---|---|
| **CONNORS LLP** | **MANATT, PHELPS & PHILLIPS, LLP** |
| BY: /s/ Terrence M. Connors<br>Terrence M. Connors<br>Katherine G. Howard<br>1000 Liberty Building<br>Buffalo, NY 14202<br>(853) 852-5533<br>tmc@connorsllp.com<br>kgh@connorsllp.com<br><br>*Plaintiffs' Liaison Counsel* | BY: /s/ Adrianne E. Marshack<br>Craig J. de Recat<br>Matthew P. Kanny<br>Adrianne E. Marshack<br>11355 West Olympic Boulevard<br>Los Angeles, California 90064-1614<br>(310) 312-4000<br>cderecat@manatt.com<br>mkanny@manatt.com<br>amarshack@manatt.com |
| **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**<br>Demet Basar<br>Daniel Tepper<br>Kate McGuire<br>270 Madison Ave.<br>New York, New York 10016<br>(212) 545-4600<br>basar@whafh.com<br>tepper@whafh.com<br>mcguire@whafh.com<br><br>*Plaintiffs' Lead Counsel* | **GOLDBERG SEGALLA, LLP**<br>Cheryl A. Possenti<br>65 Main Street<br>Buffalo, New York 14203<br>(716) 566-5400<br>cpossenti@goldbergsegalla.com<br><br>Patrick B. Naylon<br>2 State St., Suite 1200<br>Rochester, New York 14614<br>(585) 295-5400<br>pnaylon@goldbergsegalla.com<br><br>*Attorneys for Defendants*<br>*Fisher-Price, Inc. and Mattel, Inc.* |

APPENDIX A

| Field | Description |
|---|---|
| BATES_BEGIN | First bates number assigned to the first page of the document |
| BATES_END | Last bates number assigned to the last page of the document. |
| ATTACH_BEGIN | First bates number assigned to parent. |
| ATTACH_END | Last bates number assigned to the last child. |
| PAGE_COUNT | Number of images provided for the document. |
| CUSTODIAN | Individual/Source assigned to the record at collection time. |
| ALL_CUSTODIANS | Additional Custodians who had a copy prior to de-duplication |
| FAMILY_ID | Group identifier that facilitates grouping of documents with their attachments |
| REDACTED | |
| PRIVILEGED | |
| CONFIDENTIAL | |
| CONVERSATION INDEX FIELD | File Property: Conversation Index Field |
| DOC_TITLE | File property Title |
| DOCUMENT AUTHOR | File property Document Author |
| DOC_SUBJECT | File property Subject |
| PROCESSED_TIMEZONE | Timezone selected when processing the data. |
| CREATED_DATE | File system create date (MM/DD/YYYY) [Normalized to EST, taking into account observance of daylight savings time] |
| CREATED_TIME | File system create time [Normalized to EST, taking into account observance of daylight savings time] |
| LAST_MODIFY_DATE | File system last modify date (MM/DD/YYYY) [Normalized to EST, ,taking into account observance of daylight savings time] |
| LAST_MODIFY_TIME | File system last modify time [Normalized to EST, taking into account observance of daylight savings time] |
| LAST_SAVED_BY | File property Last Saved By |
| DOC_TYPE | Category of file (e.g. MSG, ATTACH, USERFILE) |
| FILE_TYPE | Type of file (e.g. Word, Excel) |
| FOLDERPATH | Original location folderpath information or folder where email resided in email container (in the case of |

| | |
|---|---|
| | emails) |
| FILE_NAME | Name of file |
| FILE_EXT | Extension of the file. |
| EMAIL FROM | Email FROM value. |
| CC | Email CC value. |
| BCC | Email BCC value. |
| RECIPIENT | Email TO value. |
| DATE_SENT | Date email sent (MM/DD/YYYY) [Normalized to EST, taking into account observance of daylight savings time] |
| TIME_SENT | Time email sent [Normalized to EST, taking into account observance of daylight savings time] |
| DATE_RECEIVED | Date email received (MM/DD/YYYY) [Normalized to EST, taking into account observance of daylight savings time] |
| TIME_RECEIVED | Time email received [Normalized to EST, taking into account observance of daylight savings time] |
| EMAIL_SUBJECT | Email Subject value. |
| TEXT_LINK | Relative path to the document level text file (e.g. TEXT\001\GM00000001.TXT) |
| NATIVE_LINK | Relative path to native file (if produced). (e.g. \NATIVES\001\GM000000001.XLS) |
| MD5_HASH | Hash of native file. |

80640